**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**DENVER STARCHER,** on behalf
of himself and all other persons
and entities similarly situated**,**

        Plaintiff,

    v.                                   **CIVIL ACTION NO. 5:23-CV-61**
                                                     Judge Bailey

**TRIAD HUNTER, LLC,** a foreign
limited liability company d/b/a
Triad Hunter, **SWN PRODUCTION
(OHIO), LLC,** a foreign limited liability
company, **SWN PRODUCTION
COMPANY, LLC,** a foreign limited liability
company, and **SOUTHWESTERN ENERGY
COMPANY,** a foreign corporation**,**

        Defendants.

<u>**ORDER GRANTING MOTION**</u>
<u>**FOR CLASS CERTIFICATION**</u>

       Pending before this Court is Plaintiff's Motion for Class Certification [Doc. 103], filed

December 16, 2024.  Defendants filed a Response in Opposition [Doc. 110] on January

6, 2025.  Plaintiffs filed a Reply [Doc. 119] on January 16, 2025.  The Motion has been fully

briefed and is ripe for decision.  For the reasons that follow, this Court will grant plaintiff's

Motion for Class Certification.[1]

---

       [1] On January 29, 2025, this Court stayed the above-styled action pending hearing in ***Romeo v. Antero Res. Corp.***, 2024 WL 4784706 (W.Va. Nov. 14, 2024).  The Supreme Court of Appeals of West Virginia issued its decision on June 11, 2025.  2025 WL 1650051.  That decision does not alter or impact the Court's analysis of this Motion.

1

## BACKGROUND

This case arises out of alleged improper deductions for post-production costs from defendants' oil and gas royalty programs. *See* [Doc. 26].   Plaintiff alleges that since January 1, 2010, defendants have improperly deducted post-production costs from plaintiff's and all other similarly situated persons' oil and gas royalty payments. [Id. at ¶¶ 1, 4].

A brief synopsis of defendants' various mergers and acquisitions is warranted. Triad Hunter, LLC ("Triad") is the original lessee to each putative Class Lease. Triad began drilling wells on lands covered by some of the putative Class Leases in 2011 and continued until 2018. [Doc. 110-2 at 52]. At the time, Triad was a subsidiary of Magnum Hunter Resources ("MHR"). [Id.]. MHR and Triad filed for bankruptcy protection in December 2015, emerged from bankruptcy in May 2016, and were renamed Blue Ridge Mountain Resources. [Id.].[2] Triad continued to operate the leases and wells at issue.

In March 2019, Blue Ridge Mountain Resources merged with Eclipse Resources Corporation, and the combined entity was renamed Montage Resources. [Id. at 10–11]. In November 2020, Southwestern Energy Corporation ("SWN") acquired Montage Resources. [Id. at 11]. On April 30, 2021, Triad merged into Blue Ridge Mountain Resources Inc.; Blue Ridge Mountain Resources Inc. merged into Eclipse Resources I, LP; and Eclipse Resources I, LP was converted to SWN Production (Ohio), LLC ("SWNPO"). [Id. at 53]. SWNPO operated the wells at issue until December 29, 2023, when SWNPO

---

[2] As a result of Triad's bankruptcy, any claims for the deduction of post-production costs attributable to hydrocarbons produced before May 6, 2016, are discharged and barred. Plaintiff is not seeking damages from the time period pre-dating Triad's bankruptcy. *See* [Doc. 81 at 10–11].

merged into SWN Production Company, LLC ("SWNPC"), which is the current lessee to the putative Class Leases.  [Id.].

In Count I of the Amended Complaint, plaintiff asserts a cause of action for breach of contract. [Doc. 26 at ¶¶ 54–61].  This claim is straightforward.  The Amended Complaint alleges that because plaintiff's oil and gas leases do not explicitly state that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale, fail to identify with particularity the specific deductions the lessee intends to take, and do not provide a clear method for calculating the amounts to be deducted from royalty payments, the lessee of plaintiff's oil and gas leases is not permitted to deduct post-production costs from his royalty payments and, therefore, breached the leases by deducting post-production costs from plaintiff's and the Class Member.s' royalty payments.  [Id.].

In Count II, plaintiff asserts a cause of action for accounting.  [Id. at ¶¶ 62–66].  Plaintiff alleges that defendants have received and/or continue to receive monies in collection with sale of oil and gas produced and marketed pursuant to the leases, in which plaintiff and the Class Members hold royalty interests under the terms of their respective leases.  [Id. at ¶ 63].  Plaintiff claims that defendants, as lessees or former lessees, are bound by implied duties and legal or equitable obligations to the plaintiff and Class Members.  [Id. at ¶ 64]. These obligations include a duty of cooperation and reasonableness, as well as the right to an accounting of oil and gas sales, detailing the total amount of oil and gas extracted and sold, the proceeds received, and any costs or expenses deducted before royalty payments are made. [Id.].  Plaintiff argues the amounts due and owed plaintiff and the Class Members are unknown and cannot be ascertained without an accounting.  [Id. at ¶ 65].

3

In Count III, plaintiff asserts a cause of action for interest pursuant to West Virginia Code § 37C-1-3.  [Id. at ¶¶ 67–73].  Plaintiff argues he and the Class Members are owed statutory interest under West Virginia Code § 37C-1-3.  [Id.].  Specifically, plaintiff alleges that defendants violated this statute by not timely remitting royalty payments to plaintiff and the Class members.  [Id. at ¶ 70].  Plaintiff argues that defendants' failure to timely remit royalty payments to plaintiff and the Class Members is not due to lack of record title in the interest owner, a legal dispute concerning the interest, a missing or unlocatable owner of the interest, or due to conditions otherwise specified in Article 1 of West Virginia Code § 37C-1-3.  [Id. at ¶ 71].

In Count IV, plaintiff asserts a cause of action for declaratory relief.  [Id. at ¶¶ 74–79].  Plaintiff argues an actual controversy of a justiciable nature exists in the Northern District of West Virginia requiring a judicial declaration of contractual and/or legal rights, relations, duties, and obligations.  [Id. at ¶ 76].  Plaintiff seeks a declaratory judgment of the duties and obligations of the parties under the leases on seven (7) matters. [Id. at ¶ 78].

In the instant Motion, plaintiff seeks an order:

(1)     Certifying plaintiff's proposed class;

(2)     Appointing plaintiff Denver Starcher as class representative;

(3)     Appointing Daniel J. Guida, Chistian E. Turak, and Jeremy M. McGraw as class counsel for the certified class; and

(4)     Directing class counsel to prepare a proposed notice of the certification to the defined class to be mailed to the members of the class, in accordance with the requirements of Federal Rule of Civil

4

Procedure 23(c)(B), to be submitted to this Court for its approval within thirty (30) days after entry of its Order certifying the class.

[Doc. 103 at 1–2].

Plaintiff moves for certification of a class defined as follows:

Persons and entities, including their respective successors and assigns, to whom Southwestern Energy, SWNPO and/or SWNPC have paid oil and gas royalties on oil and gas produced by Southwestern Energy, SWNPO and/or SWNPC pursuant to oil and gas leases which contain the following royalty payment provision, without regard to whether the royalty is one-eighth or some other figure: "In consideration of the premises the Lessee covenants and agrees: (A) To deliver to the credit of the Lessor in tanks or pipelines, as royalty, free of cost one-eighth (1/8) part of all oil produced and saved from the premises, or at Lessee's option to pay to Lessor the market price for such one-eighth (1/8) royalty oil at the published rate for oil of like grade and gravity prevailing on the date such oil is run into tanks or pipelines. In either case the Lessor to pay his royalty share of any expense, if any, for treating the oil from any well to make it marketable as crude; (B) To pay to the Lessor, as royalty, for the gas, including casinghead gas, coalbed methane gas, and other gaseous substances produced from each well drilled thereon, and marketed and used off the premises, one-eighth (1/8) of the price paid

to Lessee at the well of such gas, less any charges for gathering, transportation, compression or line loss."[3]

Excluded from the class are:

1) Persons and entities paid royalties pursuant to leases containing provisions that (i) include language explicitly stating the lessor will bear some portion of the costs incurred between the wellhead and the point of sale; (ii) identify with particularity the specific deductions the lessee intends to take; and (iii) state the method of calculating the amount to be deducted.

2) Any person or entity whose royalty underpayment claim against Defendants is subject to a binding arbitration provision, a venue provision requiring suit to be brought outside of West Virginia, or a choice of law provision requiring the application of substantive law of any state other than West Virginia.

3) Southwestern Energy and its corporate affiliates, and their current officers and employees, together with any oil and gas interest owned by any Defendants;

4) Any oil and gas interest owned by any federal, state, or municipal governmental entity;

5) Agencies, departments, or instrumentalities of the United States of America;

6) Publicly traded oil and gas exploration companies; and

---

[3] This royalty provision is referred to herein as the "Triad Royalty Provision."

7) Any owner of a working interest in the wells in the class definition.

[Doc. 26 at 2–3; Doc. 103 at 5–6 (hereinafter "Class Definition")].

## LEGAL STANDARD

"A district court 'has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23.'" ***Lienhart v. Dryvit Sys., Inc.***, 255 F.3d 138, 146 (4th Cir. 2001) (quoting ***In re Am. Med. Sys., Inc.,*** 75 F.3d 1069, 1079 (6th Cir. 1996)). "[P]laintiffs bear the burden . . . of demonstrating satisfaction of the Rule 23 requirements and the district court is required to make findings on whether the plaintiffs carried their burden . . . ." ***Thorn v. Jefferson-Pilot Ins. Co.***, 445 F.3d 311, 317 (4th Cir. 2006) (quoting ***Gariety v. Grant Thornton, LLP***, 368 F.3d 356, 370 (4th Cir. 2004)).

In an action such as this, class certification may be granted only if plaintiff satisfies the requirements of numerosity, commonality, typicality, representativeness, predominance, and superiority as articulated in Rule 23(a)[4] and (b)(3).[5]   ***Lienhart***, 255 F.3d at 146.

_____

[4] Rule 23(a) provides:

**(a) Prerequisites**.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

[5] Rule 23(b)(3) provides:

**(b)  Types of Class Actions**.  A class action may be maintained if Rule 23(a) is satisfied and if:

*        *        *

"[N]umerosity requires that a class be so large that 'joinder of all members is impracticable.'  Fed.R.Civ.P. 23(a)(1).  Commonality requires that 'there are questions of law or fact common to the class.'  Fed.R.Civ.P. 23(a)(2).  The common questions must be dispositive and over-shadow other issues."  *Id*. (citing *Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir. 1990)).  "In a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions."  *Id.* at fn.4 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)).

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'  *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks omitted).  Representativeness requires that the class representatives 'will fairly and adequately protect the interests of the class.'  Fed.R.Civ.P. 23(a)(4). . . . [T]he final three requirements

------

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

of Rule 23(a) 'tend to merge, with commonality and typicality "serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."' *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 337 (4th Cir. 1998) (quoting *Falcon,* 457 U.S. at 157 n. 13)." *Id.* at 146–47.

"[A]part from the enumerated requirements, 'Rule 23 contains an implicit threshold requirement that the members of a proposed class be "readily identifiable."'" *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 654–55 (4th Cir. 2019) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)).  Under this principle, sometimes called "ascertainability," "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

"In contrast to actions under Rule 23(b)(1) and (b)(2), Rule 23(b)(3) actions are '[f]ramed for situations in which class-action treatment is not clearly called for,' but 'may nevertheless be convenient and desirable.' *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997) (internal quotation marks omitted).  In addition to the four Rule 23(a) requirements, Rule 23(b)(3) actions such as this one must meet two requirements: predominance and superiority.  Predominance requires that '[common] questions of law or fact . . . predominate over any questions affecting only individual members.' Fed.R.Civ.P. 23(b)(3).  The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' *Amchem,* 521 U.S. at 623.

Superiority requires that a class action be 'superior to other methods for the fair and efficient adjudication of the controversy.' Fed.R.Civ.P. 23(b)(3)." *Lienhart*, 255 F.3d at 147.

These questions present common legal issues which are susceptible to class action treatment. Trial courts have great discretion to conduct and manage litigation in an efficient and equitable manner. Manual for Comp. Litig., at Introduction,10.13 (4th ed. 2005). Particularly in the context of a class action, Rule 23 "allows district courts to devise imaginative solutions to problems created by . . . [determining] individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *see also In re Scientific Atlantic Inc., Sec. Litig.*, 571 F.Supp.2d 1315, 1343 (N.D. Ga. 2007) (quoting *Carnegie* for this proposition and certifying class upon finding, "even if the Court ultimately concludes that aggregate damages models are not sufficiently reliable for use in this case, the Court is convinced that other viable alternatives exist to address any individual damages issues that may arise."). Accepted methods of assessing the individual issues relating to class members include:

> (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

10

*Id*. (citing *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 141 (2d Cir. 2001) (abrogated on other grounds)).

"Numerous courts in [this District and] other jurisdictions have certified class actions involving claims arising from natural gas leases, the royalties paid under such leases, and/or the deductions taken from such royalty payments, among other related issues." *Kay Co., LLC v. EQT Prod. Co.*, 2017 WL 10436074, at *12 (N.D. W.Va. Sept. 6, 2017) (Bailey, J.); *see, e.g.*, *Romeo v. Antero Res. Corp.*, 2020 WL 1430468 (N.D. W.Va. Mar. 23, 2020) (Keeley, J.) (certifying class of over 700 oil and natural gas lessors suing Antero Resources Corporation for breaching its obligations under the royalty provisions of different lease agreements by improperly deducting post-production costs and failing to pay royalties based upon the price received at the point of sale); *Seeco, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997) (involving claims of fraud and constructive fraud, breach of oil and gas leases, breach of duty to market gas reasonably, breach of duty of good faith and fair dealing, violation of statutes governing penalties for fraudulently withholding oil and gas lease payments, unjust enrichment, tortious interference with contractual relations, civil conspiracy, and violation of statute governing calculation of royalties); *Bice v. Petro-Hunt, L.L.C.*, 2004 N.D. 113, 681 N.W.2d 74 (2004) (claims for underpayment of royalties under leases, breach of implied covenant to market hydrocarbons, conversion, unjust enrichment, an accounting, breach of implied covenant of good faith and fair dealing, and declaratory relief); *Freebird, Inc. v. Merit Energy Co.*, 2011 WL 13638 (D. Kan. Jan. 4, 2011) (claims for breach of leases concerning underpayment of royalties, unjust enrichment, and an accounting); *Schell v. Oxy USA, Inc.*, 2009 WL 2355792 (D. Kan. July 29, 2009) (claims

11

arising from alleged breach of free gas clause in oil and gas leases and the implied duty to make gas useable for house gas use); *Anderson v. Merit Energy Co.*, 2008 WL 2484187 (D. Colo. June 19, 2008) (claims of breach of leases, the underpayment of royalties, and the implied duty of marketability); *Davis v. Devon Energy Corp.*, 147 N.M. 157, 218 P.3d 75 (2009) (court affirming class certification for declaratory and injunctive relief and reversing denial of class certification for monetary damages in case where royalty owners alleged gas producers had improperly deducted from royalty payments the costs of making coalbed methane gas marketable); *Arkansas Louisiana Gas Co. v. Morris*, 294 Ark. 496, 744 S.W.2d 709 (1988) (claims to be paid royalties on new wells drilled based upon the "proceeds" from the sale of gas from the new wells, under eight (8) to ten (10) theories of recovery, including estoppel, waiver, and reformation).

Therefore, this Court will certify a class in this case.

## ANALYSIS

### I.    Lease Language

Defendants argue throughout their Response that the putative Class Leases contain varied royalty and reporting provisions and because of this, class certification is not appropriate.  *See* [Doc. 110 at 5–9, 17–19, 19–20, 23, 25–26, 29–30].  Defendants contend that plaintiff's proposed Class Definition includes all SWNPC leases that contain the Triad Royalty Provision, regardless of whether those leases contain language, either in the body of the lease, an addendum thereto, or a subsequent amendment or contract, that alters or impacts the royalty calculation or the legal issues in this case.  [Id. at 5].

In plaintiff's Reply, plaintiff states:

Of course, if the Triad Royalty Provision is altered or changed by an addendum, amendment, or some other writing, then the Triad Royalty Provision is not contained within the Lease—it has been altered or changed. Thus, any addenda, amendment, and/or settlement language that amends or alters the [Triad Royalty Provision] language would exclude the corresponding lessor as a Class Member. Such leases would be outside the scope of the class definition as stated in the Amended Complaint.

[Doc. 119 at 5–6].

To ensure clarity and prevent the putative class from using varying lease language that impacts the payment of royalties, this Court will add the following exclusion to the Class Definition:

Any person or entity whose lease has any addendum, amendment, and/or settlement language that amends or alters the Triad Royalty Language.

## II. Ascertainability:

Under the principle called ascertainability, a class cannot be certified unless a court can readily identify the class members in reference to objective criteria. Fed.R.Civ.P. 23; *Krakauer*, 925 F.3d 643. "[A] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id*. at 655 (internal quotes and citation omitted). However, it is not required that every member of the class need be identified at the time of certification. *See id*.

In the present case, the proposed class can be ascertained. As evidenced by the plain wording of the proposed Class Definition, with this Court adding an exclusion, the

members of the proposed class can be identified by objective criteria.  Essentially, to be a Class Member, a person or entity must: (1) Have a lease where the Triad Royalty Provision is the operative royalty payment language; (2) Have received royalty payments from defendants since January 1, 2010; and (3) Have experienced the deductions of post-production costs by defendants pursuant to a lease.

Defendants argue that plaintiff cannot readily identify royalty owners who transferred their interests prior to 2021.  [Doc. 110 at 13–17].  Defendants provide a full page arguing vast amounts of title and other work will have to be performed to ascertain each individual Class Member.  [Id. at 16].

However, as noted by both parties and as made clear on the docket, plaintiff sought a Court Order requiring defendants to create a document that links wells, leases, and owners collectively over time.  *See* [Doc. 95].  Magistrate Judge Mazzone did not order defendants to create the linkage; rather, Magistrate Judge Mazzone ordered the parties to "meet and confer on a cost-sharing arrangement for accessing" certain data that may potentially assist with the linkage and "[o]nce the parties determine what information is contained within the dataset(s) at issue, the parties should meet and confer as to how Interrogatory No. 3 can best be answered."  [Doc. 99 at 4].  As both parties concede, they have failed to meet and confer regarding this issue.[6]

This Court acknowledges, as plaintiff does, that it will require work to link the 41 lessors to successor payees.  However, Magistrate Judge Mazzone ordered the parties to

---

[6] Plaintiff notes that out of the 256 identified putative Class Members, only 41 require further investigation into who their successors-in-interest were prior to January 1, 2021.  [Doc. 119 at 4].

14

meet and confer on this very issue back in November 2024.  [Doc. 99].  Putting aside issues related to the holiday season, deadlines pertinent to this case, and the fact that neither party attempted to meet and confer, this Court **ORDERS** the parties to meet and confer within **fourteen (14) days** from the date of entry of this Order with respect to linking the 41 lessors to successor payees.

Ascertainability does not require that plaintiff "be able to identify every class member at the time of certification."  *Adair*, 764 F.3d at 358.  Even if the 41 lessors that require additional work were not included, 215 lessors are still ascertainable.  Defendants have even admitted they "ha[ve] the owners, leases, and wells at issue linked from 2021 to the present, and has produced that linkage, as well as the full accounting history for each of the owners who was paid during that time period."  [Doc. 110 at 14].  Thus, the members of the Class in this case are readily identifiable.

SWN contends that the proposed class is an improper "fail-safe" class - one in which the class requires the Court to rule on the merits of the claim in order to determine who is included in the class.  This argument has merit.  The first exclusion in the proposed class definition requires this Court to make a ruling on whether a certain lease satisfies *Wellman v. Energy Resources, Inc.*, 210 W.Va. 200, 557 S.E.2d 254 (2001) and *Estate of Tawney v. Columbia Natural Resources, L.L.C.*, 219 W.Va. 266, 633 S.E.2d 22 (2006) to determine whether the leaseholders are Class Members.  This problem can easily be rectified by deleting the first exclusion from the class definition.

15

## II.    Numerosity:

The first requirement of Rule 23(a) is that the class must be of such a size that joinder of all members is impracticable. "'Impracticable does not mean impossible.' ***Robidoux v. Celani***, 987 F.2d 931, 935 (2d Cir. 1993).  Practicability of joinder depends on factors such as the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion. ***Buford*** [***v. H & R Block, Inc.***], 168 F.R.D. [340,] at 348 [(S.D. Ga. 1996)] (citing ***Kilgo v. Bowman Transp., Inc.***, 789 F.2d 859, 878 (11th Cir.1986)).  The size of individual claims is another factor to consider; where individual claims are so small as to inhibit an individual from pursuing his own claim, joinder is less likely. ***Id***. (citing ***Luyando v. Bowen***, 124 F.R.D. 52, 55 (S.D. N.Y. 1989))." ***Hewlett v. Premier Salons International, Inc.***, 185 F.R.D. 211, 215 (D. Md. 1997) (Chasanow, J.).

"There is no bright line test for determining numerosity; the determination rests on the court's practical judgment in light of the particular facts of the case. [***Buford***, 168 F.R.D. at 348] (citing ***Deutschman v. Beneficial Corp.***, 132 F.R.D. 359, 371 (D. Del. 1990)).  The class representatives are not required to specify the exact number of persons in the proposed class. ***Kernan v. Holiday Universal, Inc.***, 1990 WL 289505, at *2 (D. Md. 1990) (Howard, J.) (citing ***Marcial v. Coronet Ins. Co.***, 880 F.2d 954, 957 (7th Cir.1989)). An unsubstantiated allegation as to numerosity, however, is insufficient to satisfy Rule 23(a)(1).  ***Buford***, 168 F.R.D. at 348 (citing ***Zeidman v. J. Ray McDermott & Co.***, 651 F.2d 1030, 1038 (5th Cir.1981))." ***Id***.

16

In this case, plaintiff has identified approximately 300 leases from which approximately no less than 256 lessors have been identified as members of the defined class.  *See* [Docs. 103-3 at ¶¶ 9–12 & 103-4].  In their Response, defendants fail to provide any argument as to why the numerosity requirement has not been met.  Thus, the numerosity requirement of Rule 23 has been met because there are approximately 300 leases from which approximately no less than 256 lessors have been identified as putative Class Members.

## III.    Commonality:

Demonstrating class commonality is a low hurdle.  ***Williams v. Mohawk Indus., Inc.***, 568 F.3d 1350, 1356 (11th Cir. 2009).  The class claims must "depend upon a common contention capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  ***Wal-Mart Stores, Inc. v. Dukes***, 564 U.S. 338, 350 (2011) (cleaned up).  Commonality requires only a single issue common to the class.  ***Id***. at 359.

"Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances."  ***Smith v. Res-Care,*** Inc., 2015 WL 461529, at *4 (S.D. W.Va. Feb. 3, 2015) (Chambers, C.J.); ***EQT Prod. Co. v. Adair***, 764 F.3d 347, 366 (4th Cir. 2014) ("[T]he plaintiffs need only demonstrate one common question of sufficient importance to satisfy Rule 23(a)(2).").  In other words, the claims asserted must depend on a "common contention," the determination of which must "resolve an issue that is central to the validity of each one of the claims in one stroke."  ***Wal-Mart Stores, Inc.***, 564 U.S. at 350.  The

threshold requirement is "not high," as "Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009).  This standard "is a liberal one that cannot be defeated by the mere existence of some factual variances among class members." *Smith*, 2015 WL 461529, at *4 (citing cases).

Defendants argue that plaintiff fails to satisfy the commonality requirement because the putative Class Members have "varying contractual provisions that preclude classwide resolution, including widely varying royalty provisions that would prevent the Court from determining in 'one stroke' whether SWNPC and its predecessors were permitted to deduct post-production costs in the first instance, and whether SWNPC or its predecessors otherwise breached their royalty payment obligations through their methods of calculation." [Doc. 110 at 20].  Defendants contend that the "analysis of the royalty obligation is not limited to the royalty provision, as several provisions of the lease will impact the lessee's obligations with respect to the calculation of royalties, including but not limited to, provisions related to the use of gas; pooling provisions and other provisions that may relate to the allocation of volumes, revenues, and costs; provisions related to the deduction of severance tax; and express waivers of the implied covenants." [Id.].

As discussed *supra*, plaintiff's Class Definition, with this Court's added exclusion, only includes leases where the Triad Royalty Provision is the operative royalty provision and has not been modified, amended, and/or changed by an addendum or other writing.

Even if there was varying lease language, this Court has previously certified oil and gas lease class actions with varying lease language because the existence of variations

18

does not prevent a finding of commonality under 23(a) and predominance under 23(b)(3). *See Kay Co., LLC v. EQT Prod. Co.*, 2017 WL 10436074, at *12 (N.D. W.Va. Sept. 6, 2017) (Bailey, J.) (EQT alleged that there were at least 61 unique royalty provisions based upon a sample of only 500 out of the 25,000 lease documents) and *Hopper v. Jay-Bee Oil & Gas, Inc.*, 2023 WL 3695608 (Apr. 4, 2023) (Bailey, J.) (certifying a royalty underpayment class involving 15 different categories of leases).

Judge Keeley similarly certified a class on behalf of royalty owners in *Romeo v. Antero Res. Corp.*, 2020 WL 1430468 (N.D. W.Va. Mar. 23, 2020), which involved variations in lease language. *Id.* at *11. These cases demonstrate that an analysis of variations in lease language can be performed within the confines of Rule 23 and cases like this make sense for class treatment.

Additionally, courts outside this district have similarly found that variations in lease language do not preclude class certification where royalty owners were treated identically and paid in the same manner regardless of varying lease language. For example, in *Fankhouser v. XTO Energy, Inc.*, 2010 WL 5256807 (W.D. Okla. Dec. 16, 2010), the court certified claims alleging underpayment of royalties despite differing contractual language, noting that the defendant made no such distinctions when calculating royalties:

> Defendant's assertions that the class members' leases do not contain identical royalty provisions and the gas produced from plaintiffs' wells is lower in Btu content than gas from other class members' well are not sufficient to eliminate commonality. Moreover, the court finds defendant's lease language argument disingenuous given that it pays royalties without

regard to particular lease language.  *All* putative plaintiffs are paid in the same manner regardless of whether the underlying lease is a proceeds, bifurcated, market value or gross proceeds lease. . . . All members of the class are paid based on the same formula, and that formula has at its heart prices that plaintiffs contend are based on intra-company sales.  As all members of the putative class "possess the same interest and [have suffered] the same injury," the court finds commonality exists. . . .

Given their identical treatment by defendant, the class members possess such cohesion [required by the predominance inquiry of Rule 23(b)(3)].  All members of the class base their claims on the same legal theory. . .  The question of defendant's liability is central to all class members and is subject to generalized proof.  The variations in Btu content of the wells and lease language are immaterial given defendant's identical treatment of all class members for royalty purposes.  Those individual differences do not predominate over the common issue of whether defendant may base its royalty payments on an alleged intra-company sale and an alleged failure to account for NGLs.

*Id.*, at \*3, 6 (emphasis in original).  *See also **Slamon v. Carrizo (Marcellus) LLC***, 2020 WL 2525961, at \*20 (M.D. Pa. May 18, 2020) (finding variations in lease language did not preclude commonality or predominance finding because the defendant used the same royalty calculation method for all leases regardless of contract language); ***Freebird, Inc. v. Merit Energy Co.***, 2011 WL 13638, at \*3–4 (D. Kan. Jan. 4, 2011) (certifying challenge

to royalty calculation and rejecting argument that "each lease is unique and must be individually construed based on the language" where defendant "calculated royalty payments for plaintiff and all putative class members the same way"); *Eaton v. Ascent Res. - Utica, LLC*, 2021 WL 3398975, at *10 (S.D. Ohio Aug. 4, 2021) (Sargus, J.) ("The trouble with [the defendant's] argument is that by grouping these leases together and treating them the same, [the defendant's] conduct reveals that it views the variations in language as distinctions without a difference."); *Beer v. XTO Energy, Inc.*, 2009 WL 764500, at *7 (W.D. Okla. Mar. 20, 2009) (finding the class members' common claims to predominate given their identical treatment by defendant in not differentiating how royalties are paid to members of the class based on lease language).[7]

In this litigation, as noted by plaintiff, there are numerous questions of law or fact which are capable of generating class-wide answers, including:

1.    Do the Triad Royalty Provision and/or the Class Leases identify with particularity the specific deductions Defendants have deducted from the Class Members' royalty payments as required by *Tawney*?

2.    Do the Triad Royalty Provision and/or the Class Leases indicate the method of calculating the amount of deductions to be taken as required by *Tawney*?

3.    Have Defendants breached the terms of the Class Leases by deducting post-production costs?

---

[7] In their commonality section of their Response, defendants also argue that many of the Class Leases include notice-and-cure provisions that must be exercised by a lessor before bringing suit. [Doc. 110 at 20].  This Court will address the notice-and-cure provisions in the predominance section of this Order.

4.      Are Defendants alter egos of each other?

5.      Have Defendants paid royalties to Class Members based on the sale of oil, gas, and natural gas liquids based upon the price received in an arm's length transaction with an unaffiliated third party or have Defendants taken "netback" deductions through affiliate sales?

6.      Have Defendants breached the terms of the Class Leases by failing to pay royalties to Class Members based on the sale of oil, gas, and/or natural gas liquids based upon the price received in arm's length transaction with an unaffiliated third party—*i.e.* by taking "netback" deductions?

These questions apply equally to the class and will generate common answers which are central to the validity of the Class Members' claims.  Because defendants engaged in a common method of calculating and paying royalties during the entirety of the class period irrespective of lease language, the common issue of whether defendants breached their royalty obligations under the Class Leases by paying royalties based on prices less than they received in an arm's length transaction with an unaffiliated third party is a question that will drive the resolution of this class litigation for all Class Members. In short, the above common questions are dispositive, apply equally to all Class Members, are central to the issues and claims of the class, and importantly, can be answered using common proof and uniform legal analysis. Thus, commonality exists here.

## IV.    **Typicality:**

"To satisfy the typicality requirement under Rule 23(a)(3), the 'claims or defenses of the representative parties [must be] typical of the claims or defenses of the class.'

22

Fed.R.Civ.P. 23(a)(3).  'A sufficient nexus is established [to show typicality] if the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on the same legal theory.'  *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 686 (S.D. Fla. 2004) (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)); *see also In re Diet Drugs,* 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000).  The class representatives and class members need not have suffered identical injuries or damages.  *United Broth. of Carpenters v. Phoenix Assoc., Inc.,* 152 F.R.D. 518, 522 (S.D. W.Va. 1994) (Haden, C.J.);  *see also Mick v. Ravenswood Aluminum Corp.,* 178 F.R.D. 90, 92 (S.D. W.Va. 1998) (Haden, C.J.)."  *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D. W.Va. 2005) (Goodwin, J.).

    "The typicality requirement has been observed to be a redundant criterion, and some courts have expressed doubt as to its utility.  *Buford,* 168 F.R.D. at 350 (citing *Sanders v. Robinson Humphrey/American Express, Inc.,* 634 F.Supp. 1048, 1056 (N.D. Ga. 1986), *aff'd in part, rev'd in part on other grounds sub nom., Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir. 1987), *cert. denied,* 485 U.S. 959 (1988)).  Some courts treat typicality as overlapping with commonality, *see Zapata* [*v. IBP, Inc.*], 167 F.R.D. [147,] at 160 [(D. Kan. 1996)]; *cf.* [*Gen. Tel. Co. of Southwest v.*] *Falcon,* 457 U.S. [147,] at 157 fn. 13 [(1982)] (noting that typicality and commonality 'tend to merge'); other courts equate typicality with adequacy of representation.  *Buford,* 168 F.R.D. at 350 (citing *Alfus v. Pyramid Technology Corp.,* 764 F.Supp. 598, 606 (N.D. Cal. 1991)). Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff

and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. *Zapata*, 167 F.R.D. at 160 (citing 1 *Newberg on Class Actions* § 3.13).  A plaintiff's claim may differ factually and still be typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.' *Id*. (quoting 1 *Newberg on Class Actions* § 3.13).  So long as the plaintiffs and the class have an interest in prevailing in similar legal claims, then the typicality requirement is satisfied. *Buford*, 168 F.R.D. at 351 (citing *Meyer v. Citizens and Southern Nat'l Bank*, 106 F.R.D. 356, 361 (M.D. Ga. 1985)).  The existence of certain defenses available against plaintiffs that may not be available against other class members has been held not to preclude a finding of typicality. *See id*. (citing *International Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 463 (N.D. Cal. 1983)).  The burden of showing typicality is not meant to be an onerous one, but it does require more than general conclusions and allegations that unnamed individuals have suffered discrimination. *Kernan*, 1990 WL 289505, at *3 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 556 (8th Cir. 1982), *cert. denied*, 460 U.S. 1083 (1983))." *Hewlett v. Premier Salons, Int'l, Inc.*, 185 F.R.D. 211, 216 (D. Md. 1997) (Chasanow, J.).

Defendants argue against a finding of typicality on the basis that plaintiff makes no effort to demonstrate that his lease or claim is typical of the leases or claims of all putative Class Members. [Doc. 110 at 24–26].  This argument ignores the established rule that typicality does not require that claims of the named plaintiff be identical to those asserted on behalf of the proposed class. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir.

24

2006).  Further, "[f]actual differences will not render a claim atypical if the claim arises from the same . . . practice or course of conduct that gives rise to the claims of the class members and is based on the same legal theory."   Rubenstein, 3 Newberg on Class Actions § 3:34 (5th ed.).   In this case, the named plaintiff's claims are identical to the claims of the Class Members in all material respects.  The claims in this case arise from the same practice or course of conduct, namely defendants deducting post-production costs from plaintiff and the Class Members' royalty payments pursuant to their leases.

Defendants' typicality arguments are foreclosed by this Court's opinion in *Kay*, *supra*.  In *Kay*, this Court found, "[t]o satisfy the typicality requirement under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class." 2017 WL 10436074, at *9 (internal citations omitted).  However, the "class representatives and class members need not have suffered <u>identical</u> injuries or damages." *Romeo*, 2020 WL 1430468, at *8 (citations omitted) (emphasis in original). Critically here, "a plaintiff's claim may differ factually and still be typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Kay*, 2017 WL 10436074, at *9 (quoting Newberg on Class Actions § 3.13). Thus, even if there are some factual differences among the leases of the class representatives and the leases of some of the Class Members, that will not defeat typicality because the overarching legal theory—that defendants breached the leases by deducting post-production costs—remains the same across plaintiff and each proposed Class Member.

The ***Romeo*** case is illustrative on this point.  There, the Court found typicality for the plaintiffs despite many factual differences pointed out by the defendant. ***Romeo***, 2020 WL 1430468, at *9.   The Court explained that although plaintiffs' "claims may differ factually because gas was extracted from different wells, gas was sold at different points of sale, gas was transported to different locations, gas was processed or unprocessed, or [Defendant] took different types of deductions for post-production expenses, the representative Plaintiffs' claims all arise from the same practice or course of conduct and are based on the same legal theory." ***Id***. Indeed, "all [claims] are based on the [same] theory. . . ." ***Id***.  This analysis is applicable to the alleged variations claimed by defendants. Minor factual differences among plaintiff's leases and that of others in the Class do not change the fact that all plaintiff's and the proposed Class Members' claims are based on same the theory.

## V.    Adequacy of Representation:

"The final requirement of Rule 23(a) is set forth in subsection (4), which requires that 'the representative parties will fairly and adequately protect the interests of the class.' *Fed.R.Civ.P.* 23(a)(4).  This determination requires a two-pronged inquiry: (1) the named plaintiffs must not have interests antagonistic to those of the class; and (2) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation. ***Hewlett v. Premier Salons Int'l, Inc.,*** 185 F.R.D. 211, 218 (D. Md. 1997)." ***In re Serzone Prods. Liab. Litig.***, 231 F.R.D. at 238.

In this case, this Court finds plaintiff's interests in recovering damages are identical to the Class Members' interests.  All seek a determination with respect to royalties received

and all seek the same remedy.  Despite defendants' argument that plaintiff's claims are not identical to the other proposed Class Members' claims, plaintiff seeks the same type of relief based on the same theory of the case.  Plaintiff seeks damages, plus interest, for his claims.  *See* [Doc. 26].  Accordingly, plaintiff's claims are "sufficiently interrelated to ... ensure fair and adequate representation."  **Hewlett**, 185 F.R.D. at 218 (citing **Buford**, 168 F.R.D. at 352).

This Court also notes that defendants' argument that plaintiff has had no involvement in prosecuting these claims is unavailing.  Defendants contend that plaintiff "has had no involvement in prosecuting these claims on behalf of himself and the putative class and does not understand his duties as a class representative."  [Doc. 110 at 28]. Defendants assert:

> Plaintiff does not know how his counsel will be compensated, has not played a role in making decisions about prosecuting the claims in this class action, did not help deciding what claims to assert or what defendants to sue, did not review the pleadings or assist in preparing the pleadings, does not know why he brought this case as a class action and does not understand the costs and benefits of bringing a class action versus an individual lawsuit, does not understand who is included in his putative class, has not taken their interests into account in prosecuting this litigation, does not understand the requirements for class certification, spent only 10 minutes on the phone with his counsel in preparation for his deposition, does not know whether he reached out to his lawyers about a potential claim or whether they reached out to him first, did not review the discovery responses in this case, and does

27

not believe that he has any obligation to supervise, assist, and monitor his attorneys in this case.  Plaintiff's testimony makes it clear that he has had minimal involvement as a class representative and does not understand his duties as a proposed class representative and, accordingly, is not an adequate class representative.

[Id.].  Defendants essentially argue that plaintiff should act as co-counsel in this case.  "It is hornbook law . . . that '[i]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.'" *Gunnells v. Healthplan Serv. Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) (quoting 32B Am.Jur.2d Federal Courts § 1888 (1996) (footnotes omitted)).  Plaintiff's "understanding of the basic facts underlying the claims, [along with] some general knowledge of and a willingness and ability to participate in discovery are sufficient to meet the [adequacy] standard." *Garey v. James S. Farrin, P.C.*, 2020 WL 4227551, at *8 (M.D. N.C. July 23, 2020) (Biggs, J.) (citing 1 McLaughlin on Class Actions § 4:29 (16th ed. 2019)).  Taking into account plaintiff's declaration, his participation in written discovery and his appearance for his deposition, this Court finds plaintiff has "the requisite knowledge and interest to clear the low bar for adequacy." *Id*.

Next, the applicable rules provide that "a court that certifies a class must appoint class counsel" and instruct this Court to consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in

28

handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Plaintiff's counsel has performed extensive work, including drafting plaintiffs' Complaint, then an Amended Complaint, conducting discovery, engaging in extensive motions practice, and preparing this class-certification motion. Because plaintiff and his counsel appear committed to the prosecution of this case and because there are no conflicts that would otherwise hinder representation, the adequacy prong is satisfied.[8]

## VI.   Predominance:

The first factor under Rule 23(b)(3) requires that the questions of law or fact common to all class members predominate over questions pertaining to individual members. *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. at 239.  Common questions predominate if class-wide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims.

"The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart*, 255 F.3d at 147 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)); *Gariety v. Grant*

---

[8] This Court notes that in the Response, defendants state "the fact that Plaintiff's Counsel is unable or unwilling to undertake the effort to properly ascertain the members of the putative class raises serious questions regarding whether they are adequate to serve as class counsel." [Doc. 110 at 16].  This Court is not persuaded.  This issue has nothing to do with whether plaintiff's counsel is "unable or unwilling," and everything to do with the fact that Magistrate Judge Mazzone directed the parties to "meet and confer on a cost-sharing arrangement for accessing" certain data that may assist with linkage. The parties have yet to comply with that directive, which does not reflect on counsel's adequacy to serve as class counsel.

*Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004).  Where significant common questions can be resolved for class members in one action, it is efficient to deal with class claims on a representative rather than an individual basis. *See* Charles Alan Wright & Arthur R. Miller, 7A *Federal Practice and Procedure* § 1778 (3d ed. 2009).  "The predominance inquiry focuses on whether liability issues are subject to class-wide proof or require individualized and fact-intensive determinations.  Deciding whether common questions predominate over individual ones involves a qualitative, rather than quantitative, inquiry." *Singleton v. Domino's Pizza, LLC*, 976 F.Supp.2d 665, 677 (D. Md. 2013) (Chasanow, J.) (citations omitted).

As noted by Judge Copenhaver in *Good v. American Water Works Co., Inc.*, 310 F.R.D. 274 (S.D. W.Va. 2015):

> A principle often forgotten is that the balancing test of common and individual issues is qualitative, not quantitative.  *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 427, 429 (4th Cir. 2003).  Common liability issues may still predominate even when individualized inquiry is required in other areas. *Id*. At bottom, the inquiry requires a district court to balance common questions among class members with any dissimilarities between class members.  *See Gunnells*, 348 F.3d at 427–30.
>
> While courts have denied certification when individual damage issues are especially complex or burdensome, *see, e.g., Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007), where the qualitatively overarching issue by far is the liability issue of the defendant's [actions], and

the purported class members were exposed to the same risk of harm every time, such as where a defendant violates a statute in the identical manner on every occasion, individual damages issues are insufficient to defeat class certification under Rule 23(b)(3). *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006); *Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 40 (1st Cir. 2003).  The same principle would apply here to the alleged liability [issues].

310 F.R.D. at 296–97.

Common issues will predominate if "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria — thus rendering unnecessary an evidentiary hearing on each claim."  Newberg on Class Actions § 4:50 (5th ed.).  In addition, common issues predominate when adding more plaintiffs to the class would minimally or not at all affect the amount of evidence to be introduced.  Id. Courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations and a recent dissenting decision of four Supreme Court Justices characterized the point as "well nigh universal."  Newberg on Class Actions § 4:54 (5th ed.) (citing *Comcast v. Behrend*, 569 U.S. 27 (2013)).  *See also Gunnells*, 348 F.3d at 428.

Here, the issues common to all Class Members predominate over any individual questions.  The Class Leases all contain the Triad Royalty Provision.  Thus, the answer as to whether defendants are permitted to deduct post-production costs under the Class Leases is the predominant question in this case.

31

Not all issues must be common to make a class under Rule 23(b)(3).  Rule 23 only requires that individual issues do not predominate.  Specifically, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" **Tyson Foods, Inc. v. Bouaphakeo**, 577 U.S. 442, 453 (2016) (quoting 2 Newberg § 4:49). Defendants' contention that the potential applicability of notice-and-cure provisions in some Class Leases defeats predominance ignores this.

Here, the common issue of whether defendants breached the Class Leases predominates the mere presence of any notice-and-cure provision in a Class Lease.  This was the conclusion reached by the Court in **Slamon**, 2020 WL 2525961, at *21 ("The presence of a notice and cure provision will not predominate over the common issues in this case as these terms do not alter the underlying claims.").[9]  It is undisputed that plaintiff complied with the notice-and-cure provision.  While there is no authority directly on point within the Fourth Circuit, the Fourth Circuit has held that as long as the named plaintiff has exhausted administrative remedies prior to filing the class action, there is no requirement that individual class members do the same.  *See* **Chisholm v. U.S. Postal Serv.**, 665 F.2d 482, 490 (4th Cir. 1981) ("We further do not consider it significant that class members other than Chisholm had not exhausted their administrative remedies at the time this action was filed.").

Defendants further argue that predominance is defeated by individual damages issues. [Doc. 110 at 32–34].  Defendants contend that plaintiff "makes no effort to

---

[9] This Court held the same in **Glover v. EQT Corp.**, Civil Action Number 5:19-CV-223 [Doc. 428 at 33] (Aug. 31, 2023) (Bailey, J.).

demonstrate that the putative class damages can be calculated by a uniform damages methodology." [Id. at 32].

Here, defendants have stated that they paid royalties and deducted post-production costs in a uniform manner. In an answer to an interrogatory focused on the Class Leases, defendants provided one (1) detailed method of calculating royalties without exception. *See* [Doc. 103-8 at 32–37]. Plaintiff's expert has similarly determined that defendants employed a common method of royalty accounting related to the Class Leases. *See* [Doc. 103-9 at 9–11]. Thus, this Court finds that the individualized damages issue does not foreclose class certification.

In the event that damages issues would require aspects of individual inquiry, damage issues may be bifurcated. *Id*. "Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification. In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations." *Id*. (citing Fed. R. Civ. P. 23 advisory committee's note, 1966 Amendment, subdivision (c)(4) (noting that Rule 23(c)(4) permits courts to certify a class with respect to particular issues and contemplates possible class adjudication of liability issues with "the members of the class ... thereafter ... required to come in individually and prove the amounts of their respective claims."); 5 Moore's Federal Practice § 23.23[2] (1997) ("[T]he necessity of making an individualized determination of damages for each class member generally does not defeat commonality.")).

### a.    Gas Quality, Post-Production Activities, and Post-Production Contracts

Defendants argue the putative class wells vary with respect to gas quality, post-production activities, and post-production contracts. [Doc. 110 at 10–12].  Relying on defendants' expert, Lesa Adair, defendants contend that "the physical attributes of the well streams vary and impact a number of things, including the type of post-production activities necessary to affect the delivery of the gas stream from the wellhead through the natural gas value chain. [Id. at 10 (citing [Doc. 110-2 at 55)].

Defendants also argue that because "sold volumes of NGLs and residue gas will vary from plant to plant and contract to contract" individual allocations to royalty owners will vary. [Doc. 110 at p. 20].  It is without doubt that different wells will produce different volumes of oil and gas.  Defendants further argue that there are "variations in realized pricing for similar products during the proposed class period." [Id.].  Similarly, just because different prices are realized does not mean that any "netback" deductions are not taken as a function of the price received for the volume sold—just as stated deductions are.  Calculations of any "netback" deductions, to the extent there are any, are possible to be made on a class-wide basis and do not necessarily require an individualized inquiry.

Defendants further attempt to defeat commonality on the basis that there is not a common method of royalty accounting.  However, defendants' argument seems to be premised—once again—on their unreasonably broad understanding of the class definition. *See, e.g.* [Doc. 110-1 at 83,  ¶ 27].  Indeed, in an answer to an interrogatory focused *solely on the Class Leases*, SWNPC provided one (1) detailed method of calculating royalties without exception. [Doc. 103-8].  Plaintiff's expert has similarly determined that defendants

employed a common method of royalty accounting related *solely to the Class Leases*. [Doc. 103-9 at 9–11].

Regardless, the overarching question of this class action is whether defendants are entitled to take some or any deductions pursuant to the Class Leases. If defendants have taken more or different deductions from Class Members than others, such circumstance does not defeat commonality.

## VII.    Superiority:

There are four (4), non-exhaustive factors relevant to this inquiry: (1) the interests of the members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *See* Fed.R.Civ.P. 23(b)(3)(A)–(D). As this Court has previously recognized, these factors are simply guidelines to help determine the benefits of a proposed class action. *Vance v. DirecTV, LLC*, 2022 WL 3044653, at *9 (N.D. W.Va. Aug. 1, 2022) (Bailey, J.). It has appeared to this Court that class certification in this type of litigation is overwhelmingly superior, and that observation remains true here. Accordingly, the superiority prong is satisfied.

First, there is no evidence that any of the putative Class Members are interested in individually controlling the prosecution of separate lawsuits.

Second, to this Court's knowledge, there has been no separate litigation concerning this action commenced by any of the Class Members, a fact which weighs in favor of

granting class certification. *In re Revco Securities Litigation*, 142 F.R.D. 659, 669 (N.D. Ohio 1992).

Third, concentration of the Class Members' litigation in this forum is desirable.  All of the Class Leases pertain to royalties paid from wells located in this judicial district, the claims are governed by West Virginia substantive law, defendants conduct substantial business in this judicial district, and the named plaintiff and many of the Class Members are West Virginia residents.

Fourth, this class action does not present any unusual issues which would make it difficult for this Court to manage, if certified.  Defendants have engaged in the same course of conduct with respect to all Class Members during the Class Period and which has allegedly damaged the Class Members in a common manner.  In this case, plaintiff's claims are also easily susceptible to resolution on a classwide basis.  In the event that the Class would become unmanageable, this Court can decertify the class. *S. Country Farms, Inc. v. THQ Appalachia I, LLC*, 2023 WL 2824907, at *13 (N.D. W.Va. Mar. 13, 2023) (Bailey, J.) (citing *Gunnells*, 348 F.3d at 426).

Finally, using the class action mechanism for this case will preserve judicial resources, eliminate unnecessary duplication, and prevent potentially divergent adjudications.  Indeed, this Court has previously found that class certification in similar oil and gas royalty underpayment actions is "overwhelmingly superior." *Hopper v. Jay-Bee Oil & Gas, Inc.*, 2023 WL 3695608, at *7.  The reasoning behind this finding holds true here as well.

## <u>CONCLUSION</u>

Based upon the foregoing, Plaintiff's Motion for Class Certification [**Doc. 103**] is **GRANTED**.

(A)    This Court certifies the following class:

Persons and entities, including their respective successors and assigns, to whom Southwestern Energy, SWNPO and/or SWNPC have paid oil and gas royalties on oil and gas produced by Southwestern Energy, SWNPO and/or SWNPC pursuant to oil and gas leases which contain the following royalty payment provision, without regard to whether the royalty is one-eighth or some other figure: "In consideration of the premises the Lessee covenants and agrees: (A) To deliver to the credit of the Lessor in tanks or pipelines, as royalty, free of cost one-eighth (1/8) part of all oil produced and saved from the premises, or at Lessee's option to pay to Lessor the market price for such one-eighth (1/8) royalty oil at the published rate for oil of like grade and gravity prevailing on the date such oil is run into tanks or pipelines. In either case the Lessor to pay his royalty share of any expense, if any, for treating the oil from any well to make it marketable as crude; (B) To pay to the Lessor, as royalty, for the gas, including casinghead gas, coalbed methane gas, and other gaseous substances produced from each well drilled thereon, and marketed and used off the premises, one-eighth (1/8) of the price paid

to Lessee at the well of such gas, less any charges for gathering, transportation, compression or line loss."[10]

Excluded from the class are:

1)  Any person or entity whose lease has any addendum, amendment, and/or settlement language that amends or alters the Triad Royalty Language.

2) Any person or entity whose royalty underpayment claim against Defendants is subject to a binding arbitration provision, a venue provision requiring suit to be brought outside of West Virginia, or a choice of law provision requiring the application of substantive law of any state other than West Virginia.

3) Southwestern Energy and its corporate affiliates, and their current officers and employees, together with any oil and gas interest owned by any Defendants;

4) Any oil and gas interest owned by any federal, state, or municipal governmental entity;

5) Agencies, departments, or instrumentalities of the United States of America;

6) Publicly traded oil and gas exploration companies; and

7) Any owner of a working interest in the wells in the class definition.

---

[10] This royalty provision is referred to herein as the "Triad Royalty Provision."

(B)    This Court appoints Denver Starcher as class representative; and

(C)    This Court appoints Daniel J. Guida, Christian E. Turak, and Jeremy M. McGraw as class counsel; and

(D)    This Court **DIRECTS** class counsel to prepare a proposed notice of the certification to the defined class to be mailed to the members of the class, in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(B), to be submitted to this Court for its approval within **thirty (30) days** after entry of its Order certifying the class; and

(E)    This Court **ORDERS** the parties to meet and confer within **fourteen (14) days** from the date of entry of this Order with respect to linking the 41 lessors to successor payees.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: August 1, 2025.


JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE